# EXHIBIT A

# STATE OF TENNESSEE
## THE CHANCERY COURT FOR KNOX COUNTY

2013 JUN 26 AM 10: 27

### SUMMONS

HOWARD G. HOGAN

Robert E. McCarter, PLAINTIFF

vs.

CIVIL ACTION NO. 185549-1

King Pharmaceuticals LLC, f/k/a King Pharmaceuticals, Inc., DEFENDANT )

To the above named defendant (s):

You are hereby summoned and required to serve upon Thomas S. Scott, Jr. and Christopher T. Cain, plaintiff's attorneys, whose address is Scott & Cain, 550 W. Main Street, Suite 601, Knoxville, TN 37902, Telephone: (865) 525-2150, an answer to the complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. A copy of the answer must be filed with the court either before or within a reasonable time after service. If you fail to do so, judgment by default can be taken against you for the relief demanded in the complaint.

Issued and attested this the 26 day of June, 2013.

ADA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

_Howard G Hog_
Howard G. Hogan, Clerk & Master

_Patti Bo_
Deputy Clerk

### NOTICE

To the defendant (s):

Tennessee law provides a Ten Thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek counsel of a lawyer.

### SERVICE INFORMATION

To the process server: Defendant: King Pharmaceuticals LLC f/k/a King Pharmaceuticals, Inc.

can be served at: CT Corporation, Registered Agent, 800 S. Gay Street, Suite 2012, Knoxville, TN 37620

### RETURN

I received this summons on the 26 day of June, 2013.

I hereby certify and return that on the 27 day of June, 2013, I:

[✓] served this summons and complaint on the defendant, King Pharmaceuticals LLC f/k/a King Pharmaceuticals, Inc., the following manner: Served Erika Milligan for CT corporation.

[ ] failed to serve this summons within 30 days after its issuance because: _____.

_Carol Pfost_
Process Server

The Americans with Disabilities Act prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the Americans with Disabilities Act, if necessary, the Tennessee Judicial Branch will provide reasonable modifications in order to access all of its programs, services and activities to qualified individuals with disabilities.

If you require a modification to access the judicial program and/or have special needs because of a qualified disability, you must submit a written **Request for Modification** to the Local Judicial Program ADA Coordinator listed below at least five (5) business days prior to the date of the judicial proceeding, if possible. A form is available from the Local Judicial Program ADA Coordinator or from the Tennessee Judicial Program ADA Coordinator (www.tncourts.gov)

If you need assistance, have questions or need additional information, please contact the Local Judicial Program ADA Coordinator:
Pat Carson, Compliance Officer
Knox County Human Resources Office
Suite 360, City-County Building
400 Main Street, Knoxville, Tennessee 37902
Voice Phone: (865) 215-2952 TTY: (865) 215-2497

If you need assistance, have questions or need additional information, you may also contact the Tennessee Judicial Program ADA Coordinator:
Pamela Taylor, Manager/Coordinator
State Judicial ADA Program
Administrative Office of the Courts
Nashville City Center
Suite 600, 511 Union Street
Nashville, Tennessee 37219
Telephone (615) 741-2687 FAX: (615)741-6285

The Tennessee Judicial Branch's Americans with Disabilities Act Policy regarding access to judicial program, as well as a Request for Modification form may be found online at www.tncourts.gov.

FILED

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

| | |
|---|---|
| ROBERT E. MCCARTER,<br>on behalf of himself and all others similarly situated in Tennessee,<br><br>Plaintiff,<br><br>v.<br><br>KING PHARMACEUTICALS LLC, f/k/a<br>KING PHARMACEUTICALS, INC.,<br><br>Defendant. | 2013 JUN 26 AM 10: 27<br>HOWARD G. HOGAN<br><br>No. 185549-1 |

## CLASS ACTION COMPLAINT IN EQUITY

**NOW INTO COURT** comes the Plaintiff ("Plaintiff"), by the undersigned attorneys, individually and on behalf of all others similarly situated, and brings this action for restitution pursuant to Tennessee's law of unjust enrichment. For Plaintiff's Complaint against Defendant, King Pharmaceuticals LLC, f/k/a King Pharmaceuticals, Inc. ("King" or "Defendant"), Plaintiff would show as follows:

### I. NATURE OF ACTION

1. Plaintiff brings this class action lawsuit on behalf of himself and a proposed class of indirect purchasers of King's prescription brand drug, Skelaxin.

2. As detailed below, King entered into a conspiracy with its competitors to obtain artificially-inflated prices for Skelaxin and deprive Plaintiff and the proposed class of a free and competitive market. The purpose and effect of the scheme was to prevent and delay generic competition to Skelaxin. Because generic versions of brand name drugs are typically much less expensive than their brand name counterparts, and because purchasers typically switch rapidly from brand to generic once the generic becomes available, wrongful suppression of generic competition, as occurred here, results in enormous overcharges to all purchasers of the drug at issue.

3. Plaintiff and members of the Class have been injured in their business and property because they have paid more for Skelaxin than they otherwise would have paid in the absence of Defendant's conduct. Defendant has benefited from its unlawful acts through the overpayments for Skelaxin indirectly conferred on Defendant by Plaintiff and the other Class members and through the increased profits resulting from such overpayments from Plaintiff and Class members (shared among all the co-conspirators as part of their unlawful agreements as set forth herein). It would be inequitable for Defendant to be so unjustly enriched and to be permitted to retain the benefit of these substantial overpayments that were conferred by Plaintiff and the Class on Defendant.

## II. PARTIES AND JURISDICTION

4. Plaintiff is a resident of Knox County, Tennessee. At all relevant times, Plaintiff purchased Skelaxin from a pharmacy in Knox County, Tennessee.

5. On information and belief, Defendant King is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 501 Fifth Street, Bristol, Tennessee 37620. It may be served with process in care of its Registered Agent, CT Corporation, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37620.

## III. CO-CONSPIRATORS

6. Various other individuals, firms and corporations, not named as defendants herein, have participated as co-conspirators with Defendant and have performed acts and made statements in furtherance of the conspiracy. Plaintiff reserves the right to subsequently identify some or all of these co-conspirators to the Court.

7. This class action is brought under Tennessee law. Plaintiff asserts no claim under the laws of the United States.

8. Venue is proper in Knox County pursuant to Tenn. Code Ann. § 20-4-101, which provides that venue lies in the county where Plaintiff's claim arose. A substantial part of the harm

to Plaintiff arose in Knox County, Tennessee. Specifically, Plaintiff resides in Knox County, and purchased Skelaxin for resale in Knox County during the Class Period.

9. Further, Defendant (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) has:

    (a) transacted business in Tennessee and Knox County;

    (b) intentionally availed itself of the benefits of doing business in Tennessee and in Knox County;

    (c) caused tortious damage by act or omission in Tennessee and in Knox County;

    (d) committed acts and omissions that Defendant knew or should have known would cause damage in Tennessee and in Knox County to the Plaintiff and the proposed class while:

        (i) regularly doing or soliciting business within Tennessee and in Knox County, and/or engaging in other persistent courses of conduct within Tennessee and in Knox County; and/or

        (ii) deriving substantial revenue from goods used or sold or consumer services rendered in Tennessee and in Knox County;

    (e) otherwise had the requisite minimum contacts with Tennessee and Knox County such that, under the circumstances, it is fair and reasonable to require Defendant to come to this Court to defend this action.

## IV. CLASS ACTION ALLEGATIONS

10. Plaintiff brings this action on its own behalf and on behalf of a class of persons pursuant to Tenn. R. Civ. P. 23. The Class is defined as follows:

> **All persons in Tennessee who indirectly purchased Skelaxin, but not for resale, during the Class Period. Excluded from the class are employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies of Defendant.**

The period of time from December 6, 2005 until generic versions of Skelaxin were available for purchase in Tennessee shall be referred to herein as the "Class Period."

11. The persons in the Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, Plaintiff believes that there are many thousands of Class members.

12. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

    (a)    Whether the Defendant engaged in one or more illegal contracts and conspiracies, the purpose and effect of which have been to deprive Plaintiff and the Class access to a generic version of Skelaxin;

    (b)    Whether the prices charged in Tennessee for Skelaxin were artificially-inflated as a result of Defendant's illegal contracts and conspiracies; and

    (c)    Whether Defendant was unjustly enriched to the detriment of the Class such that Class members are entitled to restitution.

13. Plaintiff's claims are typical of the Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Class, and Plaintiff challenges the practices and course of conduct engaged in by Defendant with respect to the Class as a whole.

14. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained class counsel who is competent and experienced in the prosecution of class action litigation.

15. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable. Prosecution as a class action will eliminate the possibility of repetitious litigation. Separate actions by individual class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of class members to pursue their claims. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. This class action

presents no difficulties in management that would preclude maintenance as a class action under Tenn. R. Civ. P. 23.02.

## V. FRAUDULENT CONCEALMENT

16. Plaintiff and members of the Class did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracies alleged herein until 2010.

17. Because Defendant's agreements, understandings and conspiracies were kept secret, Plaintiff and members of the Class before that time were unaware of Defendant's unlawful conduct alleged herein, and they did not know before that time that Plaintiff and the Class members had been wrongfully deprived of the opportunity to purchase generic Skelaxin at a lower price and that Defendant had been overcharging for Skelaxin.

18. As a result of Defendant's fraudulent concealment of their conduct, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and members of the Class have alleged in this Complaint.

## VI. FACTUAL ALLEGATIONS

### Benefits of Generic Competition

19. Although therapeutically equivalent to their branded counterparts, generic drugs are typically sold at substantial discounts from the price of the referenced branded drug. The first generic drug to enter the market often does so at a price 25 percent (25%) or more below that of the branded product. As additional generic drugs enter the market, generic drug prices may fall even further, often to less than fifty percent (50%) of the branded drug's price.

20. Because generic drugs are cheaper than their branded counterparts, government agencies and private purchasers have adopted policies to encourage or require pharmacists to substitute a generic drug for its branded counterpart. Many third-party payers of prescription drugs (e.g., managed care plans, Medicaid programs) encourage or insist on the substitution of generic

drugs in lieu of their branded counterparts. Further, many private purchasers request generic substitutes from their physicians and pharmacists.

21. Upon marketing of the first generic equivalent of a branded drug, the resulting competition promptly leads to a significant decrease in the branded drug's market share, unit sales, and dollar sales.

22. A 1998 Congressional Budget Office Report estimates that in 1994 alone, purchasers saved $8-10 billion on prescriptions at retail pharmacies by purchasing generic drugs instead of the branded product.

### King Owns and Markets Skelaxin

23. Skelaxin is a muscle relaxant approved by the FDA for the treatment of acute, painful, musculoskeletal conditions. Skelaxin has been marketed for more than 40 years.

24. The active pharmaceutical ingredient of Skelaxin is a chemical compound known as metaxalone. The compound metaxalone is not patented in the United States and is therefore in the public domain.

25. Since approximately mid-2003, Skelaxin has been owned, and its sales and marketing in the United States have been controlled, by King. In 2008, sales of Skelaxin in the United States were approximately $450 million.

26. Until recently, no generic versions of Skelaxin had been approved by the FDA for sale in theUnited States.

27. On information and belief, Skelaxin exhibits a unique pharmacokinetic and safety profile in that it is fast-acting, does not interfere with the motor activity used to maintain posture and balance, does not produce a loss of muscle tone, has a low incidence of side effects and drowsiness, and exerts no adverse cardiovascular effects. Moreover, Skelaxin contains an active pharmaceutical ingredient that is different from those found in other muscle relaxants, and consequently exhibits a distinct mechanism of action from those other drugs.

### Co-Conspirators Agree with King Not to Commercialize Generic Metaxalone

28. On or about October 2005, a representative of one co-conspirator who had developed generic versions of Skelaxin, Dr. Spiridon Spireas, met with King's then President and Chief Executive Officer, Brian Markison, and King's then Vice President of Business Development, Adriane Sax, at King's Princeton, New Jersey office.

29. At that meeting, Markison informed Spireas that King had settled litigation against certain generic manufacturers and that King would make substantial annual payments to those generic manufacturers and was in the process of trying to settle other similar litigation.

30. Upon information and belief, on or about December 6, 2005, King entered into an agreementwith its co-conspirators to cease or suspend commercialization of generic Skelaxin, whereby King agreed to pay its co-conspirators substantial monetary sums to not commercialize generic Skelaxin (the "Non-Commercialization Agreement").

31. Under the Non-Commercialization Agreement, King paid its co-conspirators a first payment of $35 million and committed to making further periodic payments after January 1, 2006, based on the sales of brand Skelaxin.

32. On information and belief, King has made substantial additional payments to its co-conspirators pursuant to the Non-CommercializationAgreement.

33. On information and belief, King's co-conspirators have received in excess of $200 million in payments to date pursuant to the Non-Commercialization Agreement.

### VII. CLAIMS FOR RELIEF

#### Unjust Enrichment

34. Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

35. Plaintiff and members of the Class have been injured in their business and property by reason of Defendant's unlawful actions. Plaintiff and Class members have paid more for Skelaxin than they otherwise would have paid in the absence of Defendant's conduct. Plaintiff's injury, and the injuries to Class members, are of the type Tennessee's unjust enrichment laws are designed to prevent and flow from that which makes Defendant's conduct unlawful.

36. Defendant has benefited from its unlawful acts through the overpayments for Skelaxin by Plaintiff and the other Class members and the increased profits resulting from such overpayments paid to the Defendant and shared among all the co-conspirators as part of their unlawful agreements as set forth herein. It would be inequitable for Defendant to be permitted to retain the benefit of these overpayments that were conferred by Plaintiff and the Class and retained by Defendant.

37. By reason of its unlawful conduct, Defendant should make restitution to Plaintiff and the Class. To the extent Plaintiff is required to have exhausted administrative remedies before bringing an unjust enrichment claim, exhaustion of any such remedies is not required in this instance because: (a) the issues are of the type that would be appropriate for judicial determination, and (b) applying the doctrine here would result in substantial financial hardship, inequity and economic inefficiency and would violate public policy. Further, any action which might have been taken by Plaintiff to pursue administrative remedies would have been futile.

38. In equity, Defendant should not be allowed to retain the substantial economic benefits derived from said improper conduct and should be ordered to pay restitution and prejudgment interest to Plaintiff and Class members.

### Money Had and Received

39. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if here set forth in full.

40. Based upon the aforesaid conduct of the Defendant, and the resulting inflated prices paid by Plaintiff and Class for Skelaxin, Defendants owe Plaintiff and Class members for money had and received.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that:

A. That the summons be issued and that Defendant be duly served with a copy of this Complaint and required to answer same, and that this Court decree and enter judgment;

B. That the Court certify the Class as proposed and appoint the Plaintiff asrepresentative of the Class;

C. That the Court award Plaintiff its reasonable costs;

D. That the Court decree that Defendant has been unjustly enriched by its wrongful conduct, and award restitution to Plaintiff and the Class;

E. That the Court award Plaintiff and the Class all available pre-judgment and post-judgment interest, to the fullest extent available under law or equity; and

F. That the Court order such other, further and general relief as is just and proper.

Respectfully submitted, this 20th day of June, 2013.

Thomas S. Scott, Jr., # 1086
Christopher T. Cain, #19997
SCOTT & CAIN
550 W. Main Street, Suite 601
Knoxville, TN 37902
(865) 525-2150

_W. Allen McDonald_ (signature)
W. Allen McDonald, #16210
LACY, PRICE & WAGNER, PC
249 N. Peters Road, Suite 101
Knoxville, TN 37923
(865) 246-0800

## COST BOND

The undersigned hereby acknowledge ourselves as surety for all costs in this action in an amount as required by T.C.A. § 20-12-120.

SCOTT & CAIN

By: _(signature)_